UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK RAMIREZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. CV 13-5473 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

**I.　SUMMARY**

On August 9, 2013, plaintiff Frank Ramirez ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 13, 2013 Case Management Order ¶ 5.

///
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND

### A. Previously Adjudicated Application

Plaintiff previously filed applications for Supplemental Security Income and Disability Insurance Benefits on November 30, 2007. (Administrative Record ("AR") 19, 113).

On December 11, 2009, the Administrative Law Judge ("ALJ") determined that plaintiff was not disabled through the date of the decision ("Prior Decision"). (AR 113-22). Specifically, the ALJ found: (1) plaintiff suffered from the following medically determinable impairments that in combination are severe: borderline intellectual functioning, polysubstance abuse in remission by self-report, chronic Hepatitis C infection, residuals (right-sided sensory deficits) of stroke, inguinal hernia, and osseous fragment (possibly an accessory ossicle) in the right ankle (AR 115); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 116-18); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to jobs that involved simple, repetitive tasks with no contact with the general public (AR 118); (4) plaintiff could perform his past relevant work as an Industrial Cleaner, Construction Worker II, Hot-Plate Plywood Press Laborer, and Used Car Lot Porter (AR 121); and (5) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 119).

The Appeals Council denied plaintiff's application for review of the Prior Decision. (AR 19).

///
///

**B.     Application In Issue**

On August 24, 2010, plaintiff filed subsequent applications for Supplemental Security Income and Disability Insurance Benefits. (AR 186-96). Plaintiff asserted that he became disabled on December 11, 2009, due to memory loss, mental problems, stroke and lung problems. (AR 19, 227). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on February 13, 2012. (AR 77-109).

On April 9, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19-30). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: plaintiff had borderline intellectual functioning, polysubstance abuse in remission by self-report, chronic Hepatitis C, residuals (right-sided sensory deficits) of stroke, inguinal hernia, and osseous fragment in right ankle, and beginning on April 1, 2011, plaintiff also had retrolisthesis (L5 over S1) and "spina bifida occulata [sic]" of the lumbosacral spine (AR 22); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 23-25); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to jobs that involved simple, repetitive tasks with no contact with the general public (AR 25); (4) plaintiff could perform his past relevant work as a Used Car Lot Porter and/or a Hot-Plate Plywood Press Laborer (AR 28-29); and (5) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 26).

The Appeals Council denied plaintiff's application for review. (AR 2).

///
///
///

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

        experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

      The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B.    Standard of Review

      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

      To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that a reversal or remand is warranted because the ALJ failed properly to consider Listing 12.05(C), a listing that plausibly applies to plaintiff's case. (Plaintiff's Motion at 5-13). As discussed in detail below, the Court agrees.

### A. Pertinent Law

At step three of the sequential evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in a listing. See 20 C.F.R. §§ 404.1520(d), 416.920(d). An impairment matches a listing if it meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990), superseded by statute on other grounds as stated in Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. Sullivan, 493 U.S. at 531; see 20 C.F.R. §§ 404.1526, 416.926(b); Social Security Ruling 83-19 (impairment is "equivalent" to a listing only if claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like claimant's impairment). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("[a] finding of equivalence must be based on medical evidence only") (citing 20 C.F.R. § 404.1529(d)(3)).

Although a claimant bears the burden of proving that he has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing. Marcia v.

Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). Remand is appropriate where an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case. See Lewis, 236 F.3d at 514 (plaintiff must present plausible theory as to how an impairment or combination of impairments equals a listed impairment).

In order to be considered presumptively disabled under Listing 12.05(C) based on "intellectual disability,"[1] a claimant must present evidence of (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning" which initially manifested before the age of 22 (*i.e.*, "during the developmental period"); (2) a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C); see Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing id.).

**B. Analysis**

Here, remand is appropriate because the ALJ failed adequately to evaluate whether plaintiff's impairments met or medically equaled Listing 12.05(C).

First, the record contains evidence which plausibly suggests that plaintiff had a "valid verbal, performance, or full scale IQ of 60 through 70." Specifically, in the report of a January 8, 2008 Complete Psychological Evaluation ("2008 Report"), Dr. Rosa Colonna, a state agency examining psychologist (1) noted that upon objective psychological testing (*i.e.*, Wechsler Adult Intelligence Scale-III) plaintiff's IQ scores were verbal 74, performance 72, and full scale 70; and

---

[1] The impairment formerly listed under § 12.05 as "mental retardation" has been renamed "intellectual disability," but "[t]he substance of the listing has not changed." Kennedy v. Colvin, 738 F.3d 1172, 1175 n.1 (9th Cir. 2013).

7

(2) opined that the test results "appear[ed] to be a generally valid estimate of [plaintiff's] functional level at [the] time." (AR 324-25). The lowest of the three scores (*i.e.*, full scale IQ of 70) plausibly satisfies the first requirement of Listing 12.05(C). See, e.g., Kennedy, 738 F.3d at 1177 (Listing 12.05(C) requires IQ score "no higher than 70") (citation omitted); Staudmier v. Astrue, 2011 WL 6888802, at *5 (D. Or. Dec. 23, 2011) (performance IQ of 70, if valid, may meet Listing 12.05(C)) (citation omitted); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."); Ray v. Chater, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (inferring "that when multiple I.Q. scores are available[,] the Regulations prefer the lowest score").

As defendant correctly notes, the ALJ questioned the validity of plaintiff's other IQ scores that were obtained in connection with Dr. Colonna's 2010 Complete Psychological Evaluation of plaintiff.[2] (AR 24, 345). Nonetheless, even assuming the 2010 IQ scores did not meet the requirements of Listing 12.05(C), as discussed above, the full scale IQ score of 70 in Dr. Colonna's 2008 Report plausibly did. The ALJ's decision does not mention Dr. Colonna's 2008 Report or plaintiff's 2008 IQ scores noted therein, nor does the ALJ provide any

///
///
///

---

[2]In the report of a November 30, 2010 Complete Psychological Evaluation ("2010 Report"), Dr. Colonna noted IQ scores for plaintiff of verbal comprehension 68, perceptual reasoning 75, and full scale 70. (AR 345). The ALJ essentially found such IQ scores not valid in light of Dr. Colonna's opinions that (1) the results of the objective testing may have reflected "an underestimation of [plaintiff's] ability . . . [because plaintiff] gave up easily on items with suboptimal effort"; (2) plaintiff's IQ scores were, nonetheless, "grossly in the appropriate range"; and (3) plaintiff's "overall cognitive ability" actually fell "withing the borderline range." (AR 24) (citing Exhibit B4F at 5 [AR 346]).

sufficient explanation for his implicit rejection of such probative evidence.[3]  See Marcia, 900 F.2d at 176 (ALJ must adequately discuss and evaluate evidence before concluding that impairments fail to meet or equal listing); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ "must explain why 'significant probative evidence has been rejected.'") (citation omitted).

      Defendant contends that plaintiff failed to meet Listing 12.05 because plaintiff was never "actually [] diagnosed with mental retardation." (Defendant's Motion at 3-4). Listing 12.05, however, "does not require a formal diagnosis of mental retardation." Applestein-Chakiris v. Astrue, 2009 WL 2406358, at *8 (S.D. Cal. Aug. 5, 2009) (citations omitted); see also Christner v. Astrue, 498 F.3d 790, 794 (8th Cir. 2007) ("formal diagnosis of mental retardation" not required to meet Listing 12.05) (citation omitted); Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006) (introductory paragraph of Listing 12.05 "[does not] require[] a formal diagnosis of mental retardation"). Defendant asserts that plaintiff's position is "[f]urther weaken[ed]" because "[plaintiff's] diagnosis was borderline intellectual functioning." (Defendant's Motion at 4). None of the cases defendant cites, however, persuasively hold that a valid IQ score which meets Listing 12.05 is somehow negated by a separate diagnosis of borderline intellectual functioning. In any event, the ALJ did not base his determination at step three on the absence of a formal diagnosis of mental retardation or the presence of a diagnosis of

---

[3]Defendant appears to suggest that the ALJ relied on Dr. Colonna's 2008 Report to conclude that plaintiff did not meet or equal Listing 12.05(C). (Defendant's Motion at 4-5). The ALJ's decision, however, reflects that the ALJ determined that Listing 12.05(C) had not been met based solely on the findings in Dr. Colonna's 2010 Report. (AR 24) (citing Exhibit B4F at 4-5 [AR 345-46]). To the extent the ALJ chose not to address plaintiff's 2008 IQ scores because Dr. Colonna's 2008 Report was an exhibit in the medical record from the Prior Decision (which the ALJ declined to "reopen or revise") (AR 19), the ALJ erred. Cf. Rizo v. Colvin, 2013 WL 4029199, at *2 (N.D. Cal. Aug. 6, 2013) (where res judicata bars reconsideration of prior disability decisions, the doctrine "does not extend to the evidence relied upon in those [prior] decisions") (citations omitted).

borderline intellectual functioning.  This Court may not affirm the ALJ's credibility determination based on reasons not articulated by the ALJ.  See Molina, 674 F.3d at 1121 (citing Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947)) ("[courts] may not uphold an [ALJ's] decision on a ground not actually relied on by the agency"); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

      Second, the record also contains evidence which plausibly suggests that plaintiff's mental impairment "initially manifested during the developmental period."  Here, plaintiff testified at the hearing that he only had a sixth-grade education, he had been placed in special education classes for "all subjects," and as of the date of the hearing, he was still unable to read or write.  (AR 86, 101). Such evidence reasonably supports an inference that plaintiff's mental deficiency manifested before age 22, as Listing 12.05 requires.  See, e.g., Christner, 498 F.3d at 793 (evidence that plaintiff could not read or write, had a sixth grade education, and attended special education classes in school "likely met [plaintiff's] burden of establishing onset before age twenty-two" required by Listing 12.05); Maresh, 438 F.3d at 900 (record indicated that plaintiff's mental retardation initially manifested before the age of 22 where plaintiff "struggled in special education classes through the ninth grade, and then dropped out of school," "had trouble with reading, writing, and math," and "exhibited deficits in adaptive functioning at a young age, when he had frequent fights with other children").  The ALJ's conclusory finding that "there is no evidence of [plaintiff's] intellectual functioning before the age of 22" (AR 24) does not adequately address this requirement of Listing 12.05.  See Lewis, 236 F.3d at 512 ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.

A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so.") (citing Marcia, 900 F.2d at 176).

Moreover, several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life. See Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) (holding that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a claimant's] life"); see also Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); Luckey v. United States Department of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1989) ("the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22 [for purposes of Listing 12.05(C)]; "[I]n the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant [throughout claimant's life]."); Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir. 1986) (holding that a claimant's IQ relates back and does not just reflect a new occurrence). The Court finds the reasoning of the Fourth, Seventh, Eighth, and Eleventh circuits to be persuasive.

Defendant argues that plaintiff failed to satisfy this requirement, in part, because (1) plaintiff's long work history after the age of 22 is "inconsistent with [early onset of] listing level problems in adaptive functioning"; (2) the ALJ found plaintiff's subjective statements "not entirely credible," and, therefore, plaintiff's testimony was insufficient to show early onset; (3) "[p]laintiff did not provide academic records indicating he attended special education classes"; and (4) plaintiff's disability report "noted that [plaintiff] did not attend special education classes" (Defendant's Motion at 5-6). Plaintiff's work history is insufficient to rebut the presumption that plaintiff's IQ remained constant since

prior to age 22. See Luckey, 890 F.2d at 669 ("the Secretary may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met. . . .") (citation omitted). Moreover, the ALJ did not state that plaintiff failed to meet his burden on any of these grounds. Again, this Court is constrained to review the reason cited by the ALJ which, as noted above, was inadequate.

Third, the record also contains evidence which plausibly suggests that plaintiff had "a physical or other mental impairment imposing an additional and significant work-related limitation of function." An additional impairment satisfies this prong of Listing 12.05(C) if it meets the definition of a "severe" impairment at step two – *i.e.*, "its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 & n.3 (9th Cir. 1987) (additional severe physical or mental impairment "automatically satisfie[s] the more than slight or minimal effect standard" under Listing 12.05(C)) (citations omitted); see also 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A) (for purposes of Listing 12.05(C) an additional impairment "significantly limits [claimant's] physical or mental ability to do basic work activities" if it "is a 'severe' impairment[], as defined in [20 C.F.R.] §§ 404.1520(c) and 416.920(c)"); cf. Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) ("An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'") (emphasis in original; citations omitted). Here, the ALJ found that plaintiff had a severe impairment or combination of impairments apart from plaintiff's mental condition (*i.e.,* chronic Hepatitis C, residuals (right-sided sensory deficits) of stroke, inguinal hernia, and osseous fragment in right ankle, retrolisthesis (L5 over S1), and spina bifida occulta of the lumbosacral spine). (AR 22).

Finally, to the extent the ALJ simply adopted the Prior Decision's finding that plaintiff's impairments did not meet Listing 12.05, his step three

determination in the instant case is not supported by substantial evidence. (AR 23). Although in certain circumstances a prior ALJ's findings are entitled to some *res judicata* consideration,[4] deference is not appropriate where, like here, new facts or evidence suggests that a particular prior finding was incorrect. See Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988) ("res judicata may be inappropriate where the claimant has presented new facts to demonstrate that a prior determination of nondisability may have been incorrect") (citing Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir. 1985)); Wilson v. Chater, 1996 WL 400974, at *7 n.8 (N.D. Cal. July 9, 1996) ("[A] court might not apply res judicata where the claimant . . . has presented new facts to demonstrate that a prior determination of non-disability may have been incorrect.").

Here, in the Prior Decision, the ALJ found that plaintiff's mental impairment did not meet Listing 12.05(C), in part, because "[plaintiff did] not have a valid verbal, performance or full scale IQ of 60 through 70. . . ." (AR 117). That statement, however, was inconsistent with the ALJ's other finding in the Prior Decision that in 2008 plaintiff "scored a . . . full scale IQ of 70" and that the related 2008 psychological testing produced "a generally valid estimate of [plaintiff's] functional level." (AR 117). Although apparently inadvertent, the ALJ's incorrect characterization of such evidence calls into question the validity

---

[4] A prior final determination that a claimant is not disabled creates a rebuttable presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985); Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 568 (9th Cir. 1983). A claimant can rebut the presumption of continuing non-disability by presenting evidence of "changed circumstances." Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (citation omitted). Even when a claimant overcomes the presumption of continuing non-disability, a prior ALJ's individual findings may still be entitled to some *res judicata* consideration in subsequent proceedings. See Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (prior ALJ's findings "cannot be reconsidered by a subsequent [ALJ] absent new information not presented to the first [ALJ]") (citing Chavez, 844 F.2d at 694); see Social Security Acquiescence Ruling 97-4(9), 1997 WL 742758 (subsequent ALJ must adopt findings reached during sequential evaluation process on prior claim absent "new and material evidence relating to such a finding. . . .").

1 of both the ALJ's prior evaluation of the medical record and the ALJ's Prior
2 Decision as a whole.  See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297
3 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate
4 characterization of the evidence" cannot support an adverse credibility
5 determination); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995)
6 ("inaccurate characterizations of the Plaintiff's medical record" found to constitute
7 reversible error).  Accordingly, although the ALJ did question the validity of
8 plaintiff's 2010 IQ scores noted in Dr. Colonna's 2010 Report, as plaintiff points
9 out, such new evidence (*i.e.*, a repeated full scale IQ score of 70) suggests that it
10 was inappropriate for the ALJ here simply to adopt the step three determination
11 from the Prior Decision.  (Plaintiff's Motion at 9).
12       For the foregoing reasons, the ALJ's adverse step three finding constitutes
13 legal error.  Accordingly, this case must be remanded for further consideration and
14 clarification of plaintiff's impairments at step three of the sequential evaluation
15 process.
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## V. CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 31, 2014

                                               /s/
                            Honorable Jacqueline Chooljian
                            UNITED STATES MAGISTRATE JUDGE

---

[5] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[6] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).